IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TIMOTHY CHEY, | ) | CIV. NO. 13-00139 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING |
| | ) | DEFENDANT AIR CHINA, LTD'S |
| vs. | ) | MOTION TO DISMISS, DOC. NO. 26; |
| | ) | (2) GRANTING IN PART |
| ORBITZ WORLDWIDE, INC., and | ) | DEFENDANT ORBITZ |
| AIR CHINA, | ) | WORLDWIDE, INC.'S MOTION TO |
| | ) | DISMISS AS TO IMPROPER VENUE, |
| Defendants. | ) | DOC. NO. 28; AND |
| | ) | (3) TRANSFERRING ACTION TO |
| | ) | THE NORTHERN DISTRICT OF |
| _____ | ) | ILLINOIS |

## ORDER (1) GRANTING DEFENDANT AIR CHINA, LTD'S MOTION TO DISMISS, DOC. NO. 26; (2) GRANTING IN PART DEFENDANT ORBITZ WORLDWIDE, INC.'S MOTION TO DISMISS AS TO IMPROPER VENUE, DOC. NO. 28; AND (3) TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF ILLINOIS

## I. INTRODUCTION

According to pro se Plaintiff Timothy Chey's ("Plaintiff") July 2, 2013 First Amended Complaint ("FAC"), Plaintiff booked a flight on Air China from Spain to Brazil through Orbitz Worldwide, Inc. ("Orbitz"), and was subsequently denied entry on the flight for failure to have a visa. Plaintiff alleges various state law claims against Orbitz and Air China (collectively, "Defendants") based on their failure to provide him information regarding Brazil's visa requirements and failure to assist him in making alternative travel arrangements.

Plaintiff also asserts state law claims against Orbitz based on another incident in which Orbitz provided the wrong gate information for a flight in Tokyo. The FAC asserts that the court has diversity jurisdiction, and Plaintiff seeks "$350,000 minimum damages for each action and punitive damages" against Defendants. Doc. No. 25, FAC ¶ 26.

Currently before the court are Defendants' Motions to Dismiss. Air China argues, among other things, that the court lacks subject matter jurisdiction over the claims against Air China due to the Foreign Sovereign Immunities Act of 1976 (the "FSIA"), 28 U.S.C. § 1602 et seq. Doc. No. 26. Orbitz argues that the court lacks diversity jurisdiction because Plaintiff cannot meet the $75,000 jurisdictional minimum where Plaintiff's damages are limited by Orbitz' Terms and Conditions to which Plaintiff agreed. Doc. No. 28. Orbitz further argues that venue is improper because Orbitz' Terms and Conditions designate the courts in Cook County, Illinois as the exclusive forum for any litigation.

Based on the following, the court finds that the court lacks subject matter jurisdiction over the claims against Air China due to the FSIA, and that venue is improper in this district as to Plaintiff's claims against Orbitz. The court therefore GRANTS Air China's Motion to Dismiss, GRANTS in part Orbitz' Motion to the extent it asserts that venue is improper, and TRANSFERS this action

to the Northern District of Illinois.

## II. <u>BACKGROUND</u>

**A.    Factual Background**

*1.    Allegations of the FAC*

As alleged in the FAC, Plaintiff booked a business class reservation through Orbitz.com for an Air China flight from Spain to Brazil on November 1, 2012.  Doc. No. 25, FAC ¶ 10.  Despite phone calls and emails, Defendants failed to warn Plaintiff that he needed a visa to travel to Brazil.  *Id.* ¶ 11.  When Plaintiff arrived at the airport in Spain, he was told that he would not be permitted to board the flight because he did not have a visa.  *Id.* ¶ 22.  Air China refused to help Plaintiff find another flight or otherwise assist Plaintiff, and Plaintiff was unable to find any international customer support telephone number for Defendants.  *Id.* ¶ 24.  Plaintiff asserts that Defendants knew that many Americans traveling to Brazil believed that they did not need visas, and that Defendants therefore should have provided warnings to passengers.  *Id.* ¶ 14.  Plaintiff further asserts that Orbitz purposefully hides its customer service number so that customers cannot contact it.  *Id.* at 7 ¶ 4.

The FAC alleges that in a separate incident involving a flight from Tokyo to Singapore, Orbitz provided Plaintiff the wrong terminal information for

Narita International Airport, which resulted in Plaintiff having to carry six pieces of luggage to a terminal bus and injuring his back while he tried to make his connection. *Id.* ¶¶ 27-29. Plaintiff asserts that Orbitz knew both of its "horrific and absent customer service" and its misrepresentation regarding the terminals at Narita International Airport, and still failed to take any steps to remedy these issues. *Id.* ¶ 30.

Based on these allegations, the FAC asserts state law claims titled (1) Fraud and Deceit (Count 1); (2) Negligence -- Breach of Duty of Care (Count 2); (3) Negligent Infliction of Emotional Distress (Count 3); (4) Intentional Misrepresentation (Count 4); (5) Negligent Misrepresentation (Count 5); and (6) Breach of Implied Contract (Count 6).

### 2. *Orbitz' Terms and Conditions*

As part of the reservation process on Orbitz.com, the website displays a Flight Reservation page containing a list of warnings regarding conditions that may apply to a passenger's travel, and which the customer must click "Agree and Book" to proceed with the reservation. *See* Doc. No. 28-3, Stephen Sedlak Decl. ¶ 6. By clicking on "Agree and Book," the customer acknowledges, among other things, that (1) "Internal trips require special <u>travel documentation</u> for each traveler," and (2) "You have read and agree to the <u>booking terms and conditions</u>

which incorporate the <u>privacy policy</u>."  *Id.*

The underlined words in the text quoted above provide links to further information.  For example, the "travel documentation" link provides:

> Travel Documentation
>
> Any time you travel to or connect through a foreign country, you will need to prove your citizenship.  It is the traveler's obligation to obtain all required international travel documentation.  Failure to do so may result in denied boarding and additional costs.
>
> Orbitz is not responsible for passengers who fail to obtain proper documentation prior to travel.

*Id.* ¶ 7.

The "<u>booking terms and conditions</u>" link provides Orbitz' "Terms and Conditions" for using Orbitz.  The Terms and Conditions include an "International Travel" section providing that "Orbitz does not accept liability for damages, losses, or delays that may result from improper documents for entry, exit, length of stay, or from travel to such destinations."  Doc. No. 28-4, Ortbitz Ex. A.  The Terms and Conditions also include a "Limitation of Liability" section providing:

> IN NO EVENT WILL ORBITZ OR ITS PROVIDERS BE LIABLE TO ANY PARTY FOR ANY DIRECT, INDIRECT, SPECIAL OR OTHER CONSEQUENTIAL DAMAGES FOR ANY USE OF THIS SITE, ANY HYPER LINKED WEB SITE, THE ACTS OR OMISSIONS OF PROVIDERS WHO FURNISH PRODUCTS OR SERVICES THROUGH THIS SITE,

OR THE PRODUCTS OR SERVICES OFFERED BY
PROVIDERS THROUGH THIS SITE, INCLUDING,
WITHOUT LIMITATION, WHETHER BASED IN
CONTRACT, TORT, NEGLIGENCE, STRICT
LIABILITY OR OTHERWISE, THAT ARISES OUT
OF OR IS IN ANY WAY CONNECTED WITH
(I) ANY USE OF, BROWSING OR DOWNLOADING
OF ANY PART OF OUR SITE OR CONTENT,
(II) ANY FAILURE OR DELAY (INCLUDING
WITHOUT LIMITATION THE USE OF OR
INABILITY TO USE ANY COMPONENT OF THIS
SITE FOR RESERVATIONS OR TICKETING), OR
(III) THE PERFORMANCE OR NON PERFORMANCE
BY US OR ANY PROVIDER, OR (IV) ANY
DAMAGES OR INJURY CAUSED BY ANY FAILURE
OF PERFORMANCE, ERROR, OMISSION,
INTERRUPTION, DELETION, DEFECT, DELAY IN
OPERATION OR TRANSMISSION, COMPUTER
VIRUS, COMMUNICATION LINE FAILURE, THEFT
OR DESTRUCTION OR UNAUTHORIZED ACCESS
TO, ALTERATION OF, OR USE OF RECORD, EVEN
IF ORBITZ AND THE PROVIDER(S) HAVE BEEN
ADVISED OF THE POSSIBILITY OF DAMAGES TO
SUCH PARTIES OR ANY OTHER PARTY.

If, despite the limitation above, Orbitz or a Provider is
found liable for any loss or damage which arises out of or
is in any way connected with any of the occurrences
described in the limitation above, then Orbitz and the
Providers' liability will in no event exceed, in total, the
sum of US$250.00. Some states do not allow the
limitation of liability, so the limitations above may not
apply to you.

*Id.* Finally, the Terms and Conditions provide, under "Disputes":

The laws of the State of Illinois (USA), without regard to
its conflict of law rules, will govern these Terms. The

United Nations Convention on Contracts for the
International Sale of Goods will not apply to these Terms
and Conditions.  If you take any legal action relating to
your use of our site or these Terms, you agree to file such
action only in the state and federal courts located in Cook
County, Illinois (USA). . . .

*Id.*

## B.    Procedural Background

Plaintiff filed his Complaint on March 22, 2013, and filed his FAC on
July 2, 2013 after the court determined that the Complaint failed to adequately
allege diversity jurisdiction.  *See* Doc. Nos. 22, 25.  Air China filed its Motion to
Dismiss on July 17, 2013, Doc. No. 26, and Orbitz filed its Motion to Dismiss on
July 18, 2013.  Doc No. 28.  Plaintiff filed Oppositions on September 30, 2013,
Doc. Nos. 34, 35, and Defendants filed Replies on October 7, 2013.  Doc. Nos. 36,
37.  A hearing was held on October 28, 2013.

At the October 28, 2013 hearing, the court raised the question of
where the ticket for Plaintiff's flight from Spain to Brazil was purchased.  On
November 13, 2013, Defendants provided supplemental declarations stating that
the Internet Protocol address associated with this booking was located in Paris,
France.  *See* Doc. Nos. 42, 43.

///

///

# III.  STANDARDS OF REVIEW

## A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.  The court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

"[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the four corners of the complaint -- it may consider facts and need not assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction.  *Americopters, LLC v. Fed. Aviation Admin*., 441 F.3d 726, 732 n.4 (9th Cir. 2006); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).  However, where the jurisdictional question is intertwined with the merits of the case, the court will treat the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) as a motion for summary judgment under Rule 56.  *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  The moving party "should prevail [on a motion to dismiss] only if the

material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation signals omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

**B.      Rule 12(b)(3)**

A motion to dismiss for improper venue based on a forum selection clause is properly brought under Rule 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

Federal Rule of Civil Procedure 12(b)(3) provides that a court may dismiss a claim for improper venue. Once venue is challenged, the plaintiff has the burden of proving that venue is proper in this district. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In deciding a Federal Rule of Civil Procedure 12(b)(3) motion, the court may consider facts outside the pleadings and need not accept the pleadings as true. *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005); *see also Argueta*, 87 F.3d at 324. If there are contested factual issues, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party or hold a pre-trial evidentiary hearing on the disputed facts. *Murphy v.*

*Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2004).

**C.      Pro se Pleadings**

Plaintiff is appearing *pro se*;[1] consequently, this court will liberally construe his pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam))).

## IV.  DISCUSSION

**A.      Air China's Motion to Dismiss**

Air China argues that the court lacks jurisdiction over the claims against Air China due to the FSIA.

The FSIA, at 28 U.S.C. § 1604, provides:

> Subject to existing international agreements to which the
> United States is a party at the time of enactment of this
> Act a foreign state shall be immune from the jurisdiction
> of the courts of the United States and of the States except
> as provided in sections 1605 to 1607 of this chapter.

A "foreign state" includes an "agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  In turn, an "agency or instrumentality of a foreign state" means

---

[1]  Although Plaintiff is proceeding pro se, he has previously asserted that he is a litigation attorney.  Doc. No. 1, Compl. ¶ 2.  At this time, the court nonetheless construes Plaintiff's pleadings liberally.

any entity:

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

*Id.* § 1603(b).

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see also Republic of Argentina v. Weltover*, 504 U.S. 607, 610 (1992). The court may only exercise subject matter jurisdiction if an exception to sovereign immunity applies. *See* 28 U.S.C. § 1604 (providing that "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter"); *Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759, 761 n.2 (9th Cir. 2007). In general, after a defendant makes a prima facie case that it is a foreign state, "the burden of production shifts to the plaintiff to offer evidence that an exception applies." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124-

25 (9th Cir. 2010) (quotations and citations omitted).  When a "plaintiff satisfies her burden of production, jurisdiction exists unless the defendant demonstrates by a preponderance of the evidence that the claimed exception does not apply."  *Id.* at 1125 (citations omitted).

Air China asserts that it is an "agency or instrumentality" of China because it is a corporate entity, the majority of its shares are owned by the Government of the People's Republic of China, and it is not a citizen of the United States.  Doc. No. 26, Air China Mot. at 8; *see* Doc. No. 34, Pl.'s Opp'n, Ex. 5, Yang Decl. ¶ 4.  These facts are not in dispute.  As a result, Air China has established that it is a "foreign state" for purposes of the FSIA and Plaintiff has the burden of establishing that an exception to immunity applies.[2]

The FSIA, at 28 U.S.C. § 1605(a)(2), provides that a commercial exception to immunity applies in three different types of cases, including where:

> the action is based [first] upon a commercial activity
> carried on in the United States by the foreign state; or
> [second] upon an act performed in the United States in

---

[2]  Plaintiff argues that Air China is not an agency or instrumentality of China because it is not "an organ of a foreign state or political subdivision" as required by 28 U.S.C. § 1603(b)(2).  Plaintiff's argument ignores that § 1603(b)(2) provides two avenues for Air China to qualify as an agency or instrumentality of China -- that it is either "an organ of a foreign state or political subdivision thereof, *or* a majority of [its] shares or other ownership interest is owned by a foreign state or political subdivision thereof."  *Id.* (emphasis added).  Air China qualifies as a foreign state because a majority of its shares is owned by China, and thus the "organ of a foreign state" requirement is irrelevant.

> connection with a commercial activity of the foreign state
> elsewhere; or [third] upon an act outside the territory of
> the United States in connection with a commercial
> activity of the foreign state elsewhere and that act causes
> a direct effect in the United States . . . .

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act," and defines a "commercial activity carried on in the United States by a foreign state" as "commercial activity carried on by such state and having substantial conduct with the United States."  28 U.S.C. § 1603(d), (e).

Although there is no question that Air China's operation of an airline is commercial activity, Plaintiff has nonetheless failed to establish that any of these exceptions apply in this action.

To qualify under the first exception, Plaintiff must establish that his claim is "based upon a commercial activity carried on in the United States."  28 U.S.C. § 1605(a)(2).  "In denoting conduct that forms the 'basis,' or 'foundation,' for a claim, . . . the phrase is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357; *see also Am. W. Airlines, Inc. v. GPA Grp.*, 877 F.2d 793, 796 (9th Cir. 1989) (determining that commercial activity conducted in the United States alone is insufficient, and that there must be a nexus between the defendant's

commercial activity and the plaintiff's grievance).  Although Plaintiff resides in the

United States, his claim otherwise has no connection to the United States -- the

flight at issue was from Spain to Brazil, Defendants have presented evidence that

this ticket was purchased in Paris, *see* Doc. Nos. 42, 43, and Plaintiff does not

assert any particular connection between his claims and the United States.[3]

Because Plaintiff fails to establish that any commercial activity directly related to

his injury was conducted in the United States, the first clause of the commercial

activity exception does not apply.  *See Tote v. Iberia Int'l Airlines*, 649 F. Supp.

41, 43 (E.D. Penn. 1986) (finding no sufficient nexus where plaintiff, a passenger

of a domestic flight within Spain, purchased his airline ticket while in Spain).

Second, Plaintiff has failed to establish that Air China performed any

acts in the United States in connection with its commercial activity elsewhere that

caused him injury.  "[A] failure to warn does not constitute an act performed in the

---

[3]  Thus, although Plaintiff cites to caselaw determining that the purchase of an airline ticket while in the United States suffices to establish a basis for a claim, this caselaw is not helpful where Plaintiff purchased the ticket while he was in Paris.  *See, e.g.*, *Kirkham v. Air Fr.*, 429 F.3d 288, 294-95 (D.C. Cir. 2005) (concluding that plaintiff's ticket purchase from a United States travel agency established a passenger-carrier relationship, which imposed a duty on Air France to provide "safe passage" on a domestic flight); *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 273 (3d Cir. 1980) (determining a sufficient nexus existed where plaintiff purchased his airline ticket in the United States, and the events complained of were alleged to have transpired at the midpoint of round trip passage originating in the United States); *Barkanic v. Gen. Admin. of Civil Aviation of Peoples Republic of China*, 822 F.2d 11, 12 (2d Cir. 1987) (determining a sufficient nexus existed where two American passengers killed in a domestic flight within China purchased their airline tickets in the United States).

United States in connection with a commercial activity of the foreign state

elsewhere as required by the second commercial activity exemption in the statute."

*Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1333 (2d Cir. 1990) (citations omitted).

Finally, the third exception requires Plaintiff to establish that Air

China conducted an act abroad in connection with its commercial activity, and that

this act caused a direct effect in the United States.  Plaintiff cannot meet this

exception -- Plaintiff fails to establish that any action by Air China conducted

abroad contributed to any legally significant injury he experienced in the United

States.  *See Bell Helicopter Textron Inc. v. Islamic Republic of Iran*, 892 F. Supp.

2d 219, 226 (D.C. Cir. 2012) (concluding that a direct effect requires that

"something legally significant actually happened in the United States") (quoting

*Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1515 (D.C. Cir. 1988)).  And in

any event, "[a] mere financial loss suffered by a plaintiff in the United States as a

result of the action abroad of a foreign state does not constitute a 'direct effect' and

cannot by itself create subject matter jurisdiction under section 1605(a)(2)."

*Gregorian v. Izvestia*, 871 F.2d 151, 1527 (9th Cir. 1989); *see also Zedan*, 849

F.2d at 1515.  Indeed, the FSIA does not permit jurisdiction over foreign

sovereigns when the complained of effects are attenuated, remote, or speculative.

*Weltover*, 504 U.S. at 618.

In sum, Plaintiff has failed to offer any basis to apply the commercial activity exception to Air China in this action. Plaintiff's action is not based on Air China's commercial activity conducted in the United States, any Air China act performed domestically in connection with its commercial activity elsewhere, nor any Air China conduct abroad in connection with its commercial activity that had a direct effect in the United States. The court therefore GRANTS Air China's Motion to Dismiss for lack of subject matter jurisdiction.[4]

**B.      Orbitz' Motion to Dismiss**

Orbitz argues that the court lacks subject matter jurisdiction because Plaintiff cannot establish that the amount in controversy exceeds the $75,000 necessary to invoke diversity jurisdiction, and in any event, venue is improper. The court addresses these arguments in turn.

### 1.      *Subject Matter Jurisdiction*

The diversity statute, 28 U.S.C. § 1332, provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (a) citizens of different States." Generally, the amount

---

[4] Because the court finds that Air China is immune against Plaintiffs' claims pursuant to the FSIA, the court need not address Air China's other arguments.

in controversy is determined from the face of the pleadings, and "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (quoting *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997)). "[A] defendant may secure a dismissal on the ground that it appears to a legal certainty that the claim is really for less than the jurisdictional amount when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id.* (citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986)).

A "legal certainty" exists "when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." *Pachinger*, 802 F.2d at 364. "Only three situations clearly meet the legal certainty standard: (1) when the terms of a contract limit the plaintiff's possible recovery; (2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and (3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id.* at 363. Plaintiffs have the burden "to show that it does not appear to a legal certainty that [his] claims are for less than the required amount." *United States v. S. Pac. Transp. Co.*, 543 F.2d 676, 681 (9th Cir. 1976) (citing

*Gibbs v. Buck*, 307 U.S. 66, 72 (1939)).

Orbitz argues that it appears to a legal certainty that Plaintiff cannot meet the amount-in-controversy requirement because Orbitz' Terms and Conditions to which Plaintiff agreed disclaim any liability for failure to obtain proper travel documentation and further imposed limitations on Plaintiff's ability to obtain consequential damages. Doc. No. 28-2, Orbitz Mot. at 9. This argument raises a number of potential issues, including choice of law in interpreting the Terms and Conditions, interpretation of the relevant provisions under the applicable law, and a determination of whether the Terms and Conditions limit liability on all of Plaintiff's claims. *See, e.g.*, *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1220 (D. Haw. 2010)).

Although Orbitz did not address in any meaningful way any of these issues, the court nonetheless finds that it has subject matter jurisdiction in light of Plaintiff's fraud claims. Specifically, regardless of what law applies in interpreting the Terms and Conditions (the likely candidates are Illinois or Hawaii), limitation of liability provisions are valid only to the extent they do not waive liability in situations of intentional conduct and/or fraud. *See, e.g.*, *Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship*, 115 Haw. 201, 224, 166 P.3d 961, 984 (2007) (adopting "the majority view of the states, [that a nonrecourse] provision is valid to

the extent it does not waive liability in situations of intentional or reckless conduct"); *Larsen v. Vic Tanny Int'l*, 474 N.E.2d 729, 731 (Ill. App. 1984) ("In the absence of fraud or wilful and wanton negligence, exculpatory contracts will be enforced unless (1) it would be against the settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." (quotations omitted)).

Plaintiff alleges that Orbitz engaged in fraudulent conduct -- that Orbitz (1) knew that Americans traveling to Brazil believed that they did not need visas yet nonetheless failed to provide any specific warnings to passengers, Doc. No. 25, FAC ¶¶ 11, 14; (2) hid its customer service number so that customers could not reach it, *id.* at 7 ¶ 4; and (3) misrepresented the terminals at Narita Airport. *Id.* ¶¶ 14, 30 and at 7 ¶ 4. Because Orbitz cannot limit damages for these allegations of fraud (if established) based on the Terms and Conditions, the court therefore finds that Orbitz' Terms and Conditions do not establish a legal certainty that the amount in controversy is less than the jurisdictional requirement of $75,000.[5]

---

[5] The court's analysis at this time is limited to the particular legal certainty argument raised by Orbitz. This Order should not be interpreted as preventing Orbitz from raising any other jurisdictional arguments.

## 2. Venue

Orbitz argues that venue is improper in this district due to the forum selection clause in Orbitz' Terms and Conditions requiring that such action be filed "only in the state and federal courts located in Cook County, Illinois (USA)." *See* Doc. No. 28-4, Orbitz Ex. A. The court first outlines the relevant legal framework for forum selection clauses, and then addresses the parties' arguments.

### a. Legal framework

"In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 513 (9th Cir. 1988)). According to federal law, forum selection clauses are presumptively valid and should be honored "absent some compelling and countervailing reason." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972). Further, a forum selection clause "can be equally applicable to contractual and tort causes of action." *Manetti-Farrow*, 858 F.2d at 514. "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id.*

Where a forum selection applies, it should be honored absent "some compelling and countervailing reason." *M/S Bremen*, 407 U.S. at 12. As a result,

"[t]he party challenging [a forum selection] clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140. Enforcement of a forum selection clause is unreasonable if: (1) "inclusion of the clause in the agreement was the product of fraud or overreaching;'" (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced;" and (3) "'enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing and quoting *M/S Bremen*, 407 U.S. at 12-13, 15, 18).

   *b.     Application*

   To determine whether the forum selection applies in this action, the court addresses whether: (1) Plaintiff agreed to the forum selection clause; (2) the forum selection clause applies to Plaintiff's claims; and (3) it would be unreasonable to apply the forum selection clause in this instance.

   As to the first issue, Orbitz' Terms and Conditions provide that "[i]f you take any legal action relating to your use of our site or these Terms, you agree to file such action only in the state and federal courts located in Cook County, Illinois (USA)." Doc. No. 28-4, Orbitz Ex. A. This provision is included in

21

Orbitz' Terms and Conditions, which Plaintiff expressly agreed to by booking his flight through the Orbitz.com website. Specifically, in making his reservation, Plaintiff was presented with a reservation page stating, among other things, that "You have read and agree to the <u>booking terms and conditions</u> which incorporate the <u>privacy policy</u>." Doc. No. 28-3, Sedlak Decl. ¶ 6. To book his flight, Plaintiff was required to click on an "Agree and Book" icon displaying this information, and therefore agreed to the Terms and Conditions, including the forum selection clause.[6]

As to the second issue, the court finds that the forum selection clause applies to Plaintiffs' claims in this action. Plaintiff asserts a panoply of tort claims based on Orbitz' failure to notify Plaintiff of the visa requirements for Brazil, misrepresentations regarding the terminal information for a flight in Tokyo, and its lack of customer service. Although these allegations are cast as tort claims, they directly relate to Orbitz' duties to its customers, which the Terms and Conditions define. In particular, the Terms and Conditions informed Plaintiff that (1) "[i]t is

_____

[6] Plaintiff does not argue that he did not agree to these terms and/or that these terms are not part of his agreement with Orbitz. And in any event, the court would reject such argument -- courts have generally "held that 'clicking' agreement to the terms of a contract [on a website] is an 'assent' for purposes of contract analysis." *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *3 (W.D. Wash. Aug. 17, 2007) (collecting cases); *see, e.g.*, *Register.com, Inc. v. Verio*, 356 F.3d 393, 403 (2d Cir. 2004) (determining that where a plaintiff knew of the terms of the offer, there was no reason why enforceability of the terms should depend on whether the plaintiff was offered an "I agree" button to click).

the traveler's obligation to obtain all required international travel documentation,"
Doc. No. 28-3, Sedlak Decl. ¶ 7; (2) "Orbitz is not responsible for passengers who
fail to obtain proper documentation prior to travel," *id.*; (3) "Orbitz does not accept
liability for damages, losses, or delays that may result from improper documents
for entry, exit, length of stay, or from travel to such destinations," Doc. No. 28-4,
Ortbitz Ex. A; and (4) "in no event will Orbitz or its providers be liable to any
party for any direct, indirect, special or other consequential damages for any use of
this site, any hyper linked web site, the acts or omissions of providers who furnish
products or services through this site, or the products or services offered by
providers through this site." *Id.*

   Finally, the court finds that Plaintiff has failed to establish that
enforcing the forum selection clause would be unreasonable. Although Plaintiff
asserts claims of fraud, Plaintiff establishes no basis for the court to determine that
inclusion of the forum selection clause was the product of fraud or overreaching.[7]
Nor has Plaintiff established that enforcing the forum selection clause would
effectively deprive Plaintiff of his day in court. Although Plaintiff asserts that it
would be difficult for Plaintiff to litigate in Illinois because he lives in Hawaii and

---

[7] Although Plaintiff asserts that "Orbitz.com's contract is possibly fraudulent," Doc. No. 35, Pl.'s Opp'n at 16, Plaintiff offers no basis for this assertion. Rather, Plaintiff quotes negative customer reviews of Orbitz, which, needless to say, are irrelevant as to whether the Terms and Conditions apply as to Plaintiff.

must take care of his disabled wife, the FAC outlines extensive international travel by Plaintiff as well as his wife.  In fact, at the October 28, 2013 hearing, Plaintiff asserted that he had recently visited twenty-nine countries for a film project.  Thus, although litigating in Illinois may prove inconvenient to Plaintiff, he has not established that it will deprive him of his day in court.  Indeed, at the October 28, 2013 hearing, Plaintiff asserted that if the court granted Orbitz' Motion to Dismiss, he would proceed with his claims in Illinois.  Finally, Plaintiff has not identified a strong public policy of Hawaii that would be contravened by enforcing the forum selection clause.

In opposition, Plaintiff argues that the court should consider the venue issue under 28 U.S.C. § 1404, which provides that a district court "[f]or the convenience of parties and witnesses, in the interest of justice, may transfer any civil action to any other district or division where it might have been brought . . . ."  Doc. No. 30, Pl.'s Opp'n at 19.  Although the Ninth Circuit addresses the applicability of a forum selection clause as raising a Rule 12(b)(3) issue for improper venue, Plaintiff argues that other circuits review the issue under 28 U.S.C. § 1404, and the Supreme Court has granted certiori in *Atlantic Marine Construction Co. v. United States District Court of the Western District of Texas*, 701, F.3d 736 (5th Cir. 2012), *cert. granted*, 133 S. Ct. 1748 (2013), to resolve this

issue. The court rejects this argument -- unless and until there is a decision overruling the Ninth Circuit precedent outlining that venue motions based on forum selection clauses should be reviewed under Rule 12(b)(3), the court will continue to apply Ninth Circuit precedent.

In sum, the court finds that venue is improper in this District, and GRANTS Orbitz' Motion to the extent it asserts that venue is improper.

**C.      Dismissal Versus Transfer**

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The court has discretion in determining whether to transfer or dismiss an action for improper venue. *See King v. Russell*, 963 F .2d 1301, 1304 (9th Cir. 1992). After considering the circumstances of this action, including the limited scope of this court's inquiry into the merits of Plaintiff's claims and Plaintiff's assertions that he wishes to proceed with this action wherever venue is appropriate, the court finds that it is the interest of justice to transfer this action to the Northern District of Illinois.

///

///

# V.  CONCLUSION

Based on the above, the court GRANTS Air China's Motion to

Dismiss.  The court further GRANTS in part Orbitz' Motion to the extent it asserts

that venue is improper, and TRANSFERS this action to the Northern District of

Illinois.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 21, 2013.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Chey v. Orbitz Worldwide, Inc. et al.*, Civ. No. 13-00139 JMS/KSC; Order (1) Granting
Defendant Air China, Ltd's Motion to Dismiss, Doc. No. 26; (2) Granting in Part Defendant
Orbitz Worldwide, Inc.'s Motion to Dismiss as to Improper Venue, Doc. No. 28; and
(3) Transferring Action to the Northern District of Illinois